# NATIONAL CHRISTIAN NETWORK, INC. v DEPARTMENT OF REVENUE

Case No. 84-4115

State of Florida, Division of Administrative Hearings

October 21, 1985

## APPEARANCES OF COUNSEL

**Raymond Kassis,** President, National Christian Network, Inc., for petitioner.

**Edwin A. Bayo,** Assistant Attorney General, Department of Legal Affairs, for respondent.

## OPINION

MARY CLARK, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, a formal hearing in this case was conducted in

Cocoa Beach, Florida on September 11, 1985, before Mary Clark, Hearing Officer of the Division of Administrative Hearings.

At the commencement of the hearing it was determined that Raymond Kassis, as President, had the authority to represent his corporate "person". See *Magnolias Nursing and Convalescent Center v. Department of Health and Rehabilitative Services, Office of Licensure and Certification*, 428 So. 2d 256 (Fla. 1st DCA 1982).

## ISSUES AND PROCEDURAL MATTERS

This case was initiated by a letter dated October 22, 1984, from the Department of Revenue ("Department") to National Christian Network, Inc. ("NCN") informing the organization that its Consumer Certificate of Exemption Number 05-00852-00-15 would be revoked effective November 22, 1984, in accordance with Section 212.084(3) Florida Statutes. John Fox, Executive Vice-president, responded with a timely request for an administrative hearing.

The Department contends that NCN, as a radio and television network, does not qualify for a religious exemption under Subsection 212.08(7)(a) Florida Statutes and regulations interpreting that law. NCN argues that it is entitled to the certificate as a religious, charitable or educational organization.

The only witness produced by either party was Raymond Kassis, and the facts elicited through his testimony are uncontroverted. One exhibit, the Articles of Incorporation, was placed into evidence by stipulation. The Department submitted its Proposed Finding of Fact, Conclusions of Law and Recommended Order; these have been considered and the proposed findings of fact have been incorporated below.

## FINDINGS OF FACT

1. National Christian Network, Inc. was incorporated as a Florida nonprofit corporation on October 11, 1978. Its purposes, as stated in Article II, Article of Incorporation include the following:

. . . . . . . . . . .

To establish, operate and maintain television and/or radio networks and/or stations.

To produce and broadcast to the general public religious, charitable and/or educational programs either by television or radio, or both, for the purpose of educating and instructing the general public in religious, charitable or educational matters; to promote, extend and improve religion, charity and education and to participate in religious, charitable and/or educational programs in the united

states, [sic] including but not limited to the State of Florida; to promote programs designed to increase public awareness and understanding of the needs and activities of religion, charity and/or education in the several states, including the State of Florida, and to encourage the public to give support, financial and otherwise, to such purposes.

To acquire, take, receive, purchase, own, hold, use, manage, lease, mortgage, pledge, encumber, sell and convey, or otherwise dispose of any property, including but not limited to real, personal and mixed, tangible and intangible; to issue bonds, notes, evidences of indebtedness, receipts and obligation; to receive donations, subscriptions and contributions; to make donations to organizations created for similar or like purposes, and to have and exercise all other corporate rights and powers, to do all lawful acts necessary or desirable to carry out its purposes consistent with the laws of the State of Florida (as they now exist or from time to time may be amended), and Sec. 501(c)(3) of or from time to time may be amended) and not inconsistent with these Articles of Incorporation.

. . . . . . . . . .

The primary purpose of NCN, in the words of its President, is to operate a national television network. Transcript, p. 10.

2. NCN maintains status as an organization under Section 501(c)(3) of the Internal Revenue Code and holds noncommercial, educational, F.C.C. licenses for radio and television.

3. The network activities are conducted at NCN's facility in Cocoa, Florida, twenty-four hours a day, and consist primarily of religious services by its seventy-eight multi-denominational member churches. Members include Protestant, Catholic and Jewish organizations. Some, but not all, of the church services are produced directly in the studio. The facility does not include a chapel.

4. NCN maintains a cost share plan which pays for the broadcasts. Member organizations who can afford to pay, contribute their share; the others are given free air time. Funds for the network are solicited over the air. Funds are also solicited for charitable, educational and religious projects of the member churches. Free air time is provided to a wide variety of charitable organizations for fund raising activities.

5. Some educational programs are aired; however, the network is not part of the system established by the Florida Department of Education pursuant to Section 229.805 or 229.8051 Florida Statutes.

6. The essence of NCN is that of a conduit, a medium for other

organizations to transmit religious worship services into the homes of its viewers and listeners. It also, to a lesser degree, provides the medium for organization to conduct charitable and educational activities.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction over the subject matter and the parties in the proceeding. Section 120.57(1) Florida Statutes.

2. The Department is required to review all pre-July 1, 1983 sales tax exemption certificates by July 1, 1988, to insure that the certificate holder is ". . . actively engaged in an exempt endeavor as stipulated in the statutory provisions of [Chapter 212]." Section 212.084(1)(a) Florida Statutes. ". . . If the Department determines that an entity no longer qualifies for an exemption, it shall revoke the tax exemption certificate of the entity." Section 212.084(3) Florida Statutes. Sales tax exemption certificates issued after July 1, 1983, expires five years after issuance, subject to review and reissuance procedures. Section 212.084(4) Florida Statutes.

3. The exemptions relevant in this case are described in the following pertinent portions of Section 212.08 Florida Statutes (1984).

(7) MISCELLANEOUS EXEMPTIONS.—

(a) Religious, charitable, scientific, educational and veterans' institutions and organizations.—

1. There are exempt from the tax imposed by part I of this chapter transactions involving:

a. Sales or lease directly to churches or sales or leases of tangible personal property by churches;

b. Sales or leases to nonprofit religious, nonprofit charitable, nonprofit scientific, or nonprofit educational institutions when used in carrying on their customary nonprofit religious, nonprofit charitable, nonprofit scientific, or nonprofit educational activities including church cemeteries; and

. . . . . . . . . . .

2. The provisions of this section authorizing exemptions from tax shall be strictly defined, limited, and applied in each category as follows:

a. "Religious institution" means churches and established physical places for worship in this state at which nonprofit religious services and activities are regularly conducted and carried on. The term

**245**

corporations the sole purpose of which is to provide free transportation services to church members, their families, and other church attendees.

b. "Charitable institutions" means only nonprofit corporations qualified as nonprofit pursuant to s. 501(c)(3), United States Internal Revenue Code, 1954, as amended, and other nonprofit entities, the sole or primary function of which is to provide, or to raise funds for organizations which provide, one or more of the following services if a reasonable percentage of such service is provided free of charge, or at a substantially reduced cost, to persons or organizations who are unable to pay for such service:

I. Medical aid for the relief of disease, injury, or disability;

II. Regular provision of physical necessities such as food, clothing, or shelter;

III. Services for the prevention of, or rehabilitation of persons from alcoholism or drug abuse; the prevention of suicide; or the alleviation of mental, physical, or sensory health problems;

IV. Social welfare services including adoption placement, child care, community care for the elderly, and other social welfare services which clearly and substantially benefit a client population which is disadvantaged or suffers a hardship;

V. Medical research for the relief of disease, injury, or disability; or

VI. Legal services;

and the term includes groups providing volunteer manpower to organizations designated as charitable institutions hereunder.

.    .    .    .    .    .    .    .    .    .    .

d. . . . The term "educational institutions" includes any educational television or radio network or system established pursuant to s. 229.805 or s. 229.8051 and any nonprofit television or radio station which is a part of such network or system and which holds a current exemption from federal income tax under s. 501(c)(3) of the Internal Revenue Code.

.    .    .    .    .    .    .    .    .    .    .

4. NCN claims to be a church or religious institution, a charitable institution or educational institution. Each claim will be considered separately, in reverse order, applying this principle: "While doubtful language in taxing statutes should be resolved in favor of the taxpayer, the reverse is true in the construction of exceptions and exemptions

246

from taxation." *Department of Revenue v. Skop*, 383 So. 2d 678 (Fla. App. 5th 1980).

### a. *Educational institution*?

The legislature clearly intended that some television or radio networks be included in this class. However, reference to Sections 229.805 and 229.8051 Florida Statutes limits the exemption to those networks or stations which have been established or maintained as part of the public broadcasting program system administered by the Florida Department of Education. NCN is not part of the state system and is not, therefore, included in this exemption.

### b. *Charitable institution*?

In addition to the statutory language cited in paragraph 3 above, a review of the Department's regulations is required. Rule 12A-1.01 Florida Administrative Code provides, in pertinent part:

(g) Charitable institutions shall mean only nonprofit corporations operating physical facilities in Florida at which are provided charitable services, a reasonable percentage of which shall be without cost to those unable to pay.

These factors may be considered in determining whether a nonprofit corporation with physical facilities in Florida is providing the kind of charitable services in a percentage that qualifies it for a sales tax exemption under Section 212.08(7)(c)3., F.S.; however, no one factor shall be conclusive:

1. It has qualified as a charitable organization under IRC Section 501(c)(3), 1954.

2. It provides physical necessities such as food, clothing, or shelter, a reasonable percentage of which is without cost to those unable to pay.

3. It provides medical aid for the relief of disease, injuries, or disabilities, a reasonable percentage of which is without cost to those unable to pay.

4. Its services are not primarily limited to members of or subscribers to the nonprofit corporation but are provided to the public, regardless of race, religion, age, sex, or national origin.

5. Its primary function is charitable, not business, social, educational, civic, religious, historical, fraternal, sororal, cooperative, recreational, or political.

6. If its charitable services consist primarily of referral services to the poor, it may be considered to be an "institution" if it has

247

provided those services continuously for at least 3 years immediately preceding its application.

7. A "reasonable percentage" of the charitable services provided without cost to those unable to pay may be determined by the particular circumstances of each institution, but factors that may be considered are:

a. the financial status of the institution and its financial ability to provide uncompensated services;

b. the ratio of the cost of all services compared to those offered without cost;

c. the cost of services to individuals unable to pay compared to the amount of sales tax that would have been paid without the exemption;

d. the need within the particular areas for uncompensated services;

e. bad debts of indigents shall be considered as uncompensated services.

f. the differential between medicaid reimbursement and the actual cost to a hospital shall be considered uncompensated services.

. . . . . . . . . . .

Beyond the fact of section 501(c)(3) status, very little substantive evidence was presented to support the claim for this exemption. Providing occasional free air time for fund raising activities may be vicarious charitable activity but it is not the direct provision of services nor the sole or primary function required in the statute and regulations. The primary function of NCN is the operation of a television network, which network, from Mr. Kassis' testimony, is primarily dedicated to bringing the religious messages of its multidenominational member churches to their listening and viewing public. Whether that essentially religious purpose is sufficient to qualify the organization as a church or religious institution is the subject of the next paragraph.

c. *Church or nonprofit religious institution*?

Review of the statutes and regulations relating to exemptions for this category leads to a dizzying whirlpool of circuitous definitions.

At first glance it appears that the legislature intended to distinguish between a "church" and "nonprofit religious institution", since the former enjoys a two-way sales tax exemption for tangible personal property "sold or leased directly *to or by* churches" Subsection 212.08(7)(a) 1.a. Florida Statutes. (emphasis added); while the latter's exemption applies only to tangible personal property "sold or leased *to*

248

. . . [the] institution . . ." (emphasis added). This intent is belied, however, by the statutory definition of religious institutions to mean ". . . churches and established physical places for worship." Subsection 212.08(7)(a) 2.a. Florida Statutes.[1]

The Department's regulation at 12A-1.01(4)(b) Florida Administrative Code, defines "Church" to mean ". . . a religious institution having an established physical place of worship in this state."[2] Thus, the circle is unbroken: a religious institution is a church, and a church is a religious institution. In reading the definitions in the statute and the rule together, it appears the key to the exemption is "having an established physical place of worship in this state".

Again, the record in this case lacks evidence that NCN meets that requirement. Mr. Kassis concedes that the facility does not have a chapel. Services are conducted regularly at the station but the primary purpose of such services is to reach worshippers in their homes or wherever they may be tuned in.

There are no Florida cases in the knowledge of this Hearing Officer which address the issue raised here. There is, however, a similar case in Ohio, *Maumee Valley Broadcasting Assn. v. Porterfield*, 29 Ohio St. 2nd 95, 279 N.E. 2nd 863 (1972), 54 A.L.R. 3rd 1200. The Ohio tax commissioner had rejected the broadcasting association's claim that it was a church entitled to a state sales tax exemption. The court disagreed and, while refusing to indulge in conjecture as to a common meaning of "church", held that the radio station had to be considered part of the total picture. That "total picture" included a facility of 10 acres with a broadcasting studio, as well as a 120-seat auditorium where services were conducted by two full-time staff ministers and by religious groups from the nearby community. The association's religious activities were conducted directly on its premises (including the gathering and distribution of food and bible club meetings) and indirectly through the broadcasts. This "total picture" is substantially different from the picture described by NCN's president. The religious activities are conducted through the broadcast medium; the place of worship is sited wherever the audience may be found.

---

[1] In 1984, nonprofit corporations whose sole purpose is to provide only transportation to church-goers were added to the definition.

[2] Rules 12A-1.01(4)(b) and (c) Florida Administrative Code were the subject of a Section 120.56 Florida Statutes rule challenge by an organization similar to NCN. In that case, Hearing Officer Robert T. Benton, II struck as invalid language requiring "membership rolls" and upheld the remainder of the rules as they appear today. See *Christian Television Corporation, Inc. v. Department of Revenue*, DOAH Case No. 78-142R (Final Opinion dated May 2, 1985).

In rejecting NCN's exemption, the Department relies, in part on its rule at 12A-1.01(4)(c) Florida Administrative Code which provides:

Religious organizations whose functions are radio broadcasting or conducting services for short periods of time at temporary locations are not considered to be churches.

But NCN's primary function is *television* broadcasting and the network's member churches, rather than NCN, conduct the services.

5. Given the confusing statutory and regulatory scheme for these miscellaneous exemptions, it is small wonder that NCN can argue so passionately and effectively that it ought to be entitled to some kind of exemption. The organization does not fit neatly into any single category, nor does it fit neatly within any exclusion to an exemption. What is left is the principle of statutory construction cited in paragraph 4, above, and the doubtful language is construed against the taxpayer.[3]

## RECOMMENDATION

On the basis of the foregoing, I recommended that the intended agency action be upheld and the Consumer Certificate of Exemption No. 05-00852-00-25 be revoked in accordance with Section 212.084(3) Florida Statutes.

DONE and ORDERED this 21st day of October, 1985, in Tallahassee, Florida.

---

[3] Presumably, NCN and others similarly situated could seek specific legislative relief just as the church busing organizations now included as "religious institutions" in Section 212.08(7)(a) 2.a. Florida Statutes (1984).